UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

JOHN I. DAVIS

CRIMINAL ACTION

NO. 22-93-JWD-SDJ

**RULING AND ORDER**

This matter comes before the Court on the *Motion to Dismiss Count Two* (Doc. 71) filed by Defendant John I. Davis ("Defendant" or "Davis"). The parties briefed the matter, (Docs. 78, 83, 86), before the Court ordered stays, first pending a decision by the Supreme Court in *United States v. Rahimi*, No. 22-915, (Doc. 107), and then pending an opinion by the Fifth Circuit in *United States v. Diaz*, No. 23-50452, (Doc. 117). After *Diaz* was decided, the Government submitted an additional opposition, (Doc. 125), but Defendant filed no further briefing. Oral argument was scheduled for April 8, 2025, but the Court finds that it is no longer necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submission of the parties and is prepared to rule. For the following reasons, Defendant's motion is denied.

**I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

Defendant is charged in an indictment with the following counts: (1) conspiracy to distribute and to possess with the intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 846, and (2) possession of firearms by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.) As to Count 2, Defendant has three prior felony convictions involving drug possession or drug trafficking.[1]

---

[1] These convictions include: (1) a 1999 conviction for possession of more than five pounds and less than 50 pounds of marijuana and possession of more than four grams and less than 200 grams of cocaine, (Docs. 125-2 to 125-5); (2) a 2000 conviction for conspiracy to possess with intent to distribute 100 kilograms or more of marijuana, (Docs. 125-

Defendant moved to dismiss Count 2 on the grounds that it violated the Second Amendment as interpreted by the Supreme Court in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2020). (Doc. 76-1 at 2–3.)[2] The Government responded that: (1) this Court was bound to apply Fifth Circuit precedent finding that § 922(g)(1) is constitutional under the Second Amendment, and (2) even if the Court evaluated the statute "anew under *Bruen*, it passes muster." (Doc. 83 at 8–9.) In reply, Defendant asserted: (1) that, in *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), the Fifth Circuit found that *Bruen* fundamentally changed the Second Amendment analysis, so "prior precedent [is] obsolete," (Doc. 86 at 1 (quoting *Rahimi*, 61 F.4th at 451)); and (2) under *Bruen*, (a) the Second Amendment applies to Defendant, so § 922(g)(1) is presumptively unconstitutional; and (b) under *Rahimi*, the Government must produce "relevantly similar historical regulations that imposed a comparable burden on the right of armed self-defense that were also comparably justified," (Doc. 86 at 3 (cleaned up)), and, here, the Government's historical examples are insufficient under *Rahimi* for supporting permanent disarmament for Defendant's felonies, particularly ones involving no violent conduct, (*id.* at 3–4).

Since this briefing, two higher courts issued rulings that affect the instant motion: *United States v. Rahimi*, 602 U.S. 680 (2024), and *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024). The Court will look at these cases and the relevant standards in the next section.

---

6 & 125-7); and (3) a 2008 conviction for conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine and possession with intent to distribute five kilograms or more of cocaine, (*United States v. Davis*, Crim. No. 08-67-JWD-EWD-1 (M.D. La.), Doc. 203).

[2] Defendant also argued that § 922(g)(1) "exceeds Congress' power to regulate interstate and foreign commerce." (Doc. 76-1 at 3.) Defendant noted that the issue was then under consideration by the Fifth Circuit in *United States v. Collette*, No. 22-5106. (*Id.*) Thereafter, *Collette* was decided, and the Fifth Circuit summarily rejected this argument because its "precedent forecloses this claim." *United States v. Collette*, No. 22-51062, 2024 WL 4457462, at *1 n.2 (5th Cir. Oct. 10, 2024) (per curiam) (citing *United States v. Perryman*, 965 F.3d 424, 426 (5th Cir. 2020); *United States v. Rawls*, 85 F.3d 240, 242–43 (5th Cir. 1996) (per curiam)). "Accordingly," like the Fifth Circuit, this Court "do[es] not address that issue further." *Id.*

2

The Government subsequently filed another opposition. (Doc. 125.) There, the United States pointed to a number of founding-era laws which harshly punish the possession of and trafficking in contraband, (*id.* at 7–8),[3] and the Government maintained that this "historical tradition . . . supports the disarmament of those convicted of possessing or trafficking illicit drugs." (*id.* at 8). Further, it is not dispositive that there were no founding-era laws barring the possession of dangerous drugs, as that simply was not a problem at that time, and, in any event, the Second Amendment law does not require such narrow analogues. (*Id.* at 9–11.) The Government then cites a number of district court cases from this circuit supporting its position. (*Id.* at 11–12.)

The Government next emphasizes that there is also a historical tradition of disarming those who are dangerous, and "drug trafficking is inherently dangerous." (*Id.* at 12–13.) This, says the United States, also supports a finding that § 922(g)(1) is constitutional. (*See id.* at 12–14.)

## II.  DISCUSSION

### A.  The Second Amendment Generally

The felon-in-possession statute prohibits:

> any person who has been convicted in any court of, a crime punishable by

---

[3] The Government states:

> For example, Virginia punished receipt of a stolen horse with death. 6 William Waller Hening, *The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature* 130 (1819) (1748 law). New York punished receiving a dead body with knowledge that it had been unlawfully disinterred with up to five years in state prison. Ellis Lewis, *Abridgment of the Criminal Law of the United States* 226 (1847) (1819 law). In Massachusetts, the printing of obscene books was punishable by up to five years in the state prison. *Id*. at 480. The Second Congress provided for the death penalty for theft of the mail. An Act to Establish the Post-Office and Post Roads Within the United States, § 17, 1 Stat. 232, 237 (1792). And both federal and state laws punished counterfeiting and forgery of public securities with death or estate forfeiture. *See* An Act for the Punishment of Certain Crimes Against the United States, § 14, 1 Stat. 112, 115 (1790); 2 Laws of the State of New York Passed at the Sessions of the Legislature (1785-1788) at 260-61 (1886) (1786 law); 9 William Waller Hening, *The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature* 302 (1821) (1777 law).

(Doc. 125 at 7–8.)

3

>imprisonment for a term exceeding one year[,] . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

Because § 922(g) affects the Second Amendment right to "keep and bear Arms[,]" the Court must conduct a Second Amendment analysis to determine the constitutionality of its application. *Diaz*, 116 F.4th at 462.

The Supreme Court established the Second Amendment standard in *Bruen*:

>When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

597 U.S. at 24 (citing *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 (1961)). "This historical inquiry that courts must conduct will often involve reasoning by analogy . . . ." *Id.* at 28. The question of "whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Id.* at 28–29 (citing C. Sunstein, On Analogical Reasoning, 106 Harv. L. Rev. 741, 773 (1993)). This involves finding "a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 30.

In *United States v. Rahimi*, the Supreme Court further clarified the "historical analogue" requirement. 602 U.S. at 691. "These precedents were not meant to suggest a law trapped in amber." *Id.* "[T]he appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Id.* at 692. The Court found that 18 U.S.C. 922(g)(8) was constitutional on its face and as applied to Rahimi, because our

4

country's "firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at 690.

The Fifth Circuit applied this framework to § 922(g)(1) in *Diaz*. 116 F.4th 458. *Diaz* considered the defendant's felon status in the second step of the *Bruen* analysis, collapsing the inquiry "into one question: whether the law is consistent with our Nation's history of firearm regulation." *Id.* at 467 (citing *Rahimi*, 602 U.S. at 692). The Fifth Circuit held "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1) . . . ." *Id.* Thus, the government bears the burden to demonstrate that the application of § 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation." *Id.* (quoting *Bruen*, 597 U.S. at 24) (internal quotation marks omitted).

To determine if a historical law is relevantly similar, the Fifth Circuit has said to focus "on the *why* and *how* [and] ascertain whether the challenged regulation 'impose[s] a comparable burden on the right of armed self-defense' to that imposed by a historically recognized regulation." *United States v. Quiroz*, 125 F.4th 713, 718 (5th Cir. 2025) (quoting *Bruen*, 597 U.S. at 29). In *Diaz*, the Fifth Circuit held that § 922(g)(1)'s justification (the "why") was "relevantly similar" to the examples of punishing felonies with death: "to deter violence and lawlessness." *Diaz*, 116 F.4th at 469. The Fifth Circuit also reasoned that the method by which § 922(g)(1) reaches this goal (the "how")—permanent disarmament—was consistent with historical methods because if felonies were historically punished with death, "then the lesser restriction of permanent disarmament that § 922(g)(1) imposes is also permissible." *Id.*

The holding in *Diaz* was not a blanket statement that all felonies may serve as a constitutional predicate offense to § 922(g)(1), but only those that "fit[] within this tradition of serious and permanent punishment[,]" such as death or permanent estate forfeiture. *Id.* at 470. *Diaz*

5

addressed a predicate conviction of theft, finding that there was a history and tradition of severe punishment for theft by looking to the historic laws of three states: Massachusetts, New York, and Virginia. *Id.* at 468. Further, the Fifth Circuit found that the historical "going armed" and forfeiture of weapons laws, which "punished 'those who had menaced others with firearms' . . . [and] provide[d] for permanent arms forfeiture as a penalty." *Id.* at 470–71 (citing *Rahimi*, 602 U.S. at 697; Acts and Resolves, Public and Private, of the Province of the Massachusetts Bay 53). "Imposing permanent disarmament as a punishment is also within our Nation's history and tradition." *Id.* at 471. The Fifth Circuit held that "taken together, laws authorizing severe punishments for thievery and permanent disarmament in other cases establish that our tradition of firearm regulation supports the application of § 922(g)(1) to Diaz." *Id.*

Likewise, in *United States v. Bullock*, the Fifth Circuit rejected a § 922(g)(1) challenge by a defendant with prior convictions for aggravated assault and manslaughter. 123 F.4th 183, 184–85 (5th Cir. 2024). "From the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others." *Id.* at 185 (quoting *Rahimi*, 602 U.S. at 693). "The historical record demonstrates 'that legislatures have the power to prohibit dangerous people from possessing guns.'" *Id.* (quoting *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting)); *see also Folajtar v. Attorney Gen.*, 980 F.3d 897, 912 (3d Cir. 2020) (Bibas, J., dissenting) ("The historical touchstone is danger[.]")). The Fifth Circuit reasoned that "[t]here can be no doubt that manslaughter and aggravated assault in this context constitute dangerous and violent crimes." *Id.* (citation omitted). The appellate court looked to the "historical tradition of severely punishing individuals convicted of homicide, a prototypical common law felony considered a 'very dangerous offense[, ]'" *id.* (citation omitted), and to the fact that the defendant's conduct was "'relevantly similar' to, and arguably more dangerous than,

6

the 'prototypical affray [which] involved fighting in public,' the precursor to the 'going armed' laws punishable by arms forfeiture," *id.* (quoting *Rahimi*, 602 U.S. at 697).

More recently, in *Quiroz*, the Fifth Circuit addressed 18 U.S.C. § 922(n), possession of a firearm while under indictment for a felony. 125 F.4th at 715. Quiroz was under indictment for burglary and bail jumping. *Id.* The Fifth Circuit analyzed the history of burglary as a capital offense, finding a tradition because seven states at the founding deemed burglary a capital offense. *Id.* at 724. It further said that there need not be unanimity between the states to show history and tradition. *Id.* at 725.

Ultimately, neither the Supreme Court nor the Fifth Circuit has set a minimum number of historic laws required to establish a history and tradition of serious and permanent punishment. In *Diaz*, the Fifth Circuit found a history and tradition looking at the laws of only three states. 116 F.4th at 468. In *Quiroz*, again, it was seven. 125 F.4th at 724. Thus, it appears that there is no brightline rule for determining how many states' laws are needed to establish a tradition, but *Diaz* and *Quiroz* provide guidance.

### B. The Second Amendment and Drug Trafficking

The Fifth Circuit has not yet determined whether drug trafficking crimes can serve as a constitutional predicate offense to § 922(g)(1). However, the overwhelming majority of district courts in this circuit have found that they can.

For instance, in *United States v. Wilson*, the defendant's "criminal history includes possessing a firearm by a felon, possessing heroin, illegally possessing stolen firearms, and possessing heroin with the intent to distribute it." No. 22-238, 2024 WL 4436637, at *4 (E.D. La. Oct. 6, 2024). The district court properly stated that the government had to demonstrate "that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to

7

this." *Id.* (quoting *Diaz*, 116 F.4th at 467). The Eastern District looked at the same founding-era laws that the Government currently cites and concluded that the United States demonstrated the requisite tradition:

> The government has carried its burden under *Bruen* to show "that the Nation has a longstanding tradition of disarming someone with a criminal history" analogous to Wilson's. *Id.* To carry that burden, the government relies principally on Founding-era laws criminalizing possessing and trafficking contraband. [ECF No. 89 at 6–11.] And the government has shown that one or more of Wilson's predicate convictions are sufficiently analogous to the cited Founding-era laws imposing severe punishments for possessing or trafficking contraband. Among other "relevantly similar" examples, *Diaz*, 2024 WL 4223684, at *7, the government explains that Virginia authorized imposition of the death penalty for the crime of knowing receipt of a stolen horse, that the Second Congress authorized imposition of the death penalty for the crime of theft of the mail, and that States and the federal government authorized imposition of the death penalty for the counterfeiting and forgery of public securities. [ECF No. 89 at 7 (citing, inter alia, 6 William Waller Hening, *The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature, in the Year 1619*, 130 (1819); *An Act to Establish the Post-Office and Post Roads within the United States*, § 17 1 Stat. 232, 237 (1792); *An Act for the Punishment of Certain Crimes Against the United States*, §§ 115, 1 Stat. 112, 115 (1790); 2 *Laws of the State of New York Passed at the Sessions of the Legislature* (1785-1788) 260-61 (1886); 9 William Waller Hening, *Statutes at Large; Being a Collection of All the Laws of Virginia, from the First Session of the Legislature* 302 (1821)).] If capital punishment was permissible to respond to possessing and/or trafficking contraband, "then the lesser restriction of permanent disarmament that § 922(g)(1) imposes is also permissible." [*Diaz*, 2024 WL 4223684, at *7.] Accordingly, the Founding-era laws cited by the government qualify as "relevantly similar" evidence that "establish[es] that our country has a historical tradition of severely punishing people like [Wilson] who have been convicted" of possessing and trafficking contraband. *Id.* at *6, 7.

*Id.*

The Eastern District also cited "the Nation's longstanding tradition of disarming those convicted of serious crimes indicating that they may pose a risk of violence or other danger to public safety." *Id*. at *5. The district court continued:

> Here, Wilson's predicate felony drug-and-gun convictions reveal that Wilson may pose a comparable risk of violence or other danger to public safety. Congress has long recognized "that drugs and guns are a dangerous combination." *Smith v. United States*, 508 U.S. 223, 240 (1993) (citing statistics on the percentage of murders relating to the drug trade). And federal appellate courts have acknowledged that "drug dealing is notoriously linked to violence." *United States v. Torres–Rosario*, 658 F.3d 110, 113 (1st Cir. 2011) (citations omitted); *see also, e.g.*, *United States v. Barton*, 633 F.3d 168, 174 (3d Cir. 2011) ("[O]ffenses relating to drug trafficking and receiving stolen weapons are closely related to violent crime."); *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir. 1988) ("[T]he illegal drug industry is, to put it mildly, a dangerous, violent business."). Accordingly, permanently disarming those, like Wilson, who have committed serious drug-and-gun felonies associated with violence is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

*Id*. The *Wilson* court also cited a large number of cases from around the nation supporting its position:

> Finally, for good measure, courts across the country have held Section 922(g)(1) constitutional as applied to defendants with predicate convictions resembling one or more of Wilson's predicate convictions. *See, e.g.*, *United States v. Jackson*, 110 F.4th 1120, 1125–29 (8th Cir. 2024) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate drug offenses); *United States v. Canales*, 702 F. Supp. 3d 322, 327–32 (E.D. Pa. 2023) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate drug convictions); *United States v. Goins*, 647 F. Supp. 3d 538, 554–55 (E.D. Ky. 2022) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate convictions for DUI and drug possession); *United States v. Pearson*, No. 22-CR-271, 2023 WL 6216527, at *3 (E.D. Pa. Sept. 25, 2023) (holding Section 922(g)(1) constitutional as applied to defendant with predicate drug-distribution and firearm convictions); *United States v. Blackshear*, No. 23-CR-159, 2023 WL 5985284, at *3 (E.D. Pa. Sept. 14, 2023) (same); *United States v. Reichenbach*, No. 4:22-CR-57, 2023 WL 5916467, at *8–10 (M.D. Pa. Sept. 11, 2023) (holding

9

> Section 922(g)(1) constitutional as applied to defendant with predicate drug convictions); *United States v. Wise*, No. 21-CR-511, 2023 WL 6260038, at *4–7 (W.D. Pa. Sept. 26, 2023) (finding Section 922(g)(1) constitutional as applied to defendant with one predicate drug-trafficking conviction). Many of those courts reason, as the Court has here, that "guns and drugs" are "a dangerous combination increasing the risk of violence addressed by Congress in dispossessing significant long-time drug dealers of firearms." *Pearson*, 2023 WL 6216527, at *3 (internal citation and quotation marks omitted); *see also, e.g.*, *Reichenbach*, 2023 WL 5916467, at *9 ("There are few crimes that pose a greater risk to the public than drug trafficking, and fewer still where the dangerous connection between the crime and possession of firearms is more present or better understood."); *Canales*, 702 F. Supp. 3d at 321 ("[D]isarming individuals . . . who have shown a proclivity toward drug trafficking[ ] serves the same purpose of protecting the public from unnecessary violence.").

*Id.* Thus, the defendant's motion to dismiss was denied. *Id.* at *6.

Other cases in this circuit have followed suit. In *United States v. Carter*, defendant's prior convictions included "possession with intent to distribute 28 grams or less of cocaine, possession of tramadol, and possession of a firearm by a convicted felon." No. CR 23-22, 2024 WL 4723236, at *6 (E.D. La. Nov. 8, 2024). Chief Judge Brown looked to the same three historical laws as *Wilson* and concluded, "the founding-era laws cited by the government are 'relevantly similar' evidence 'establish[ing] that our country has a historical tradition of severely punishing people like [Carter] who have been convicted' of possessing and trafficking contraband." *Id.* (quoting *Diaz*, 116 F.4th at 468–69). *Carter* also found the same "risk of violence or other danger to public safety:"

> Carter submits that his prior convictions for drug trafficking are different than the violent offenses considered by the Supreme Court in *Rahimi*. However, in *Diaz*, the Fifth Circuit held that Section 922(g)(1) is constitutional as applied to an individual previously convicted of theft, which the court recognized did "not inherently involve a threat of violence." [116 F.4th at 471 n.5.] Additionally, application of the felon-in-possession statute to drug criminals aims to address a *risk* of violence. Congress has long recognized "that

10

> drugs and guns are a dangerous combination." [*Smith v. United States*, 508 U.S. 223, 240 (1993) ("In 1989, 56 percent of all murders in New York City were drug related; during the same period, the figure for the Nation's Capital was as high as 80 percent.").] "Legislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed." [*United States v. Jackson*, 110 F.4th 1120, 1128 (8th Cir. 2024).] "This history demonstrates that there is no requirement for an individualized determination of dangerousness as to each person in a class of prohibited persons." [*Id.*] Therefore, the government has met its burden of showing that applying Section 922(g)(1) to Carter "is consistent with this Nation's historical tradition of firearm regulation." [*Diaz*, 116 F.4th at 467 (quoting *Bruen*, 597 U.S. at 17).]

*Id.* at *7. Finally, the Court stated that "this holding is consistent with rulings from courts across the country who have addressed the constitutionality of Section 922(g)(1) as applied to defendants with predicate drug possession and trafficking convictions." *Id.* at *7 & n.113 (collecting cases, including *Wilson* and those cited in it).

Additionally, many district courts have applied the same reasoning found in *Wilson* and *Carter* about drug trafficking to cases involving simple possession of drugs. *See United States v. Staeger*, No. 24-108, 2025 WL 605053, at *2 (S.D. Miss. Feb. 25, 2025) ("Other courts, including some within this Circuit, have adopted this analogy and upheld § 922(g)(1) as applied to felons convicted of drug possession. . . . The Court sees no meaningful distinction between those cases and this one, but even if it did, Defendant was also convicted of forgery, which was punishable by estate forfeiture or death at the time of the Founding." (citing, inter alia, *United States v. Mack*, No. 24-244, 2025 WL 221808, at *3 (W.D. La. Jan. 16, 2025); *United States v. Patino*, No. 24-60, 2024 WL 5010146, at *5–7 (W.D. Tex. Nov. 26, 2024); *United States v. Landrum*, No. 24-63, 2024 WL 4806486, at *1 (S.D. Miss. Nov. 15, 2024); *Wilson*, 2024 WL 4436637, at *4–5; *United States v. Sampson*, No. 24-266, 2024 WL 4418299, at *4 (D. Ariz. Oct. 4, 2024))). *See also United States v. Flowers*, No. 25-10, 2025 WL 726572, at *4 (W.D. La. Mar. 6, 2025) (denying as-applied

11

challenge to § 922(g)(1) where predicate felonies included possession of controlled dangerous substances and battery of a police officer (citing *Wilson*, 2024 WL 4436637, at *4–5; *Carter*, 2024 WL 4723236, at *6); *United States v. Garner*, No. 24-112, 2024 WL 4820794, at *3 (W.D. La. Nov. 18, 2024) (denying as-applied challenge where one prior conviction was possession of marijuana (citing *Wilson* and *Carter*)). *But see United States v. Luna*, No. 23-518, 2025 WL 760044, at *3, 6 (S.D. Tex. Feb. 10, 2025) (disagreeing with *Patino*, distinguishing cases involving "drug trafficking offenses," and "find[ing] that the Government ha[d] not met its burden of establishing a history and tradition of disarming someone with a criminal history of possession of a controlled substance").

### C. Analysis

Defendant moved to dismiss his indictment, arguing that § 922(g)(1) is unconstitutional. (Doc. 78 at 2–3.) Defendant does not specify whether the challenge is facial or as-applied; however, *Diaz* has ruled that § 922(g)(1) is facially constitutional. 116 F.4th at 472. Therefore, that argument is foreclosed, and the Court will only evaluate whether the law is unconstitutional as-applied to Defendant.

As the Fifth Circuit held in *Diaz*, an offender's status as a felon is relevant to the second prong of the *Bruen* analysis, as "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)[.]" *Id.* at 467. "The burden thus shifts to the government to demonstrate that regulating [Defendant's] possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation.'" *Id.* (quoting *Bruen*, 597 U.S. at 24).

For the same reasons given in *Wilson*, *Carter*, and the above authority, this Court finds that the application of § 922(g)(1) in this case is "consistent with the Nation's historical tradition of firearm regulation." *Id.* (quoting *Bruen*, 597 U.S. at 24) (internal quotation marks omitted). As

these decisions show, "the founding-era laws cited by the government are 'relevantly similar' evidence 'establish[ing] that our country has a historical tradition of severely punishing people like [Davis] who have been convicted' of possessing and trafficking contraband." *Carter*, 2024 WL 4723236, at *6; *see also* Doc. 125 at 7–8 (offering in this case three of the same analogues as in *Wilson*).

The analogues need not prohibit or punish drug trafficking itself. Rather, "[t]he law must comport with the *principles* underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" *Rahimi*, 602 U.S. at 692 (emphasis added). As amply shown above, the Government meets that burden with the offered founding-era laws.

Further, the above decisions demonstrate that drug trafficking carries a risk of violence. "[P]ermanently disarming those, like [Davis], who have committed serious drug-and-gun felonies associated with violence is 'consistent with the Nation's historical tradition of firearm regulation.'" *Wilson*, 2024 WL 4436637, at *5 (quoting *Bruen*, 597 U.S. at 24).

Finally, the Court agrees with the majority position that there is "no meaningful distinction" between drug trafficking and drug possession for purposes of § 922(g)(1) and the Second Amendment. *Staeger*, 2025 WL 605053, at *2. First, the analogues remain "relevantly similar," particularly "Virginia['s] authorized imposition of the death penalty for the crime of knowing *receipt* of a stolen horse[.]" *Wilson*, 2024 WL 4436637, at *4 (emphasis added) (citation omitted). And second, there is still a *risk* of violence, as those who merely possess controlled substances presumably obtained the drugs from those involved in trafficking; that is, end users are still ultimately in and an integral part of the drug trade, and obviously necessary to its existence and continuation.

For all the above reasons, Defendant's constitutional challenges fail. His motion will be denied.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss Count Two* (Doc. 71) filed by Defendant John I. Davis is **DENIED**.

**IT IS FURTHER ORDERED** that, within fourteen (14) days of this order, current defense counsel will advise the Court by notice, not to exceed five (5) pages, whether Defendant still seeks to pursue the *Motion to Suppress* (Doc. 46) and *Motion to Sever Counts* (Doc. 47) filed by previous counsel. If so, the Court will set these motions for hearing.

Signed in Baton Rouge, Louisiana, on <u>March 31, 2025</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**